UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFRED SCHNEIDER,

                              Plaintiffs,

  v.                                                Civil Action No. : 16-CV-6760

NAVIENT SOLUTIONS, INC.,

                              Defendant.
_____

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This is an action for actual and statutory damages brought by an individual consumer for Defendant's violations of the Telephone Consumer Protection Act of 1991 (hereinafter referred to as the "TCPA").  Defendant Navient Solutions, Inc. has filed a Motion for Summary Judgment to dismiss the Plaintiff's claims under the TCPA. This memorandum is in opposition to the Defendant's motion.

## SUMMARY JUDGMENT STANDARD

      Rule 56 for the Federal Rules of Civil Procedure provides that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' A fact is 'material' only if it 'might affect the outcome of the suit under governing law.' Anderson v. Liberty Lobby, Inc., 447U.S. 242, 248, 106 S. Ct. 2510, 91 l. Ed. 2d 2020 (1986). A 'genuine' dispute exists 'if the evidence is such that a reasonable  jury could return a verdict for the  non-moving party.' Id.  In determining

whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence 'must be viewed in the light most favorable to the party opposing the motion.' Adickes v. S.H. Kress & Co. 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609 L.Ed 142 (1970)."

**ARGUMENT**

The Defendant argues that Plaintiff's claim is barred by the Bipartisan Budget Act of 2015 ("the amendment"), which contains a provision exempting TCPA lawsuits for calls made to collect a debt owed to or guaranteed by the United States. The Defendant asserts that the amendment should be applied so as to bar Plaintiff's lawsuit. Defendant further argues that the Plaintiff cannot unilaterally revoke his prior consent and relies on Reyes v. Linclon Auto Fin Servs, 861 F.3D 51 (2nd Cir 2017) in support of its position. Both of these arguments fail for reasons more fully explained below and as such the Court should deny Defendant's summary judgment motion.

**I. THE FCC HAS NOT IMPLEMENTED THE AMENDMENT TO THE TCPA AND THEREFORE IT IS NOT EFFECTIVE YET**

The TCPA, as now amended per the Budget Act, states that automatic telephone dialing system ("ATDS") calls placed to a cell phone are actionable, "unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C.§227(b)(1)(iii); Public Law 114-74 (relevant portion thereof attached hereto as **Exhibit A**). However, the revised statute also states:

> **(2)REGULATIONS; EXEMPTIONS AND OTHER PROVISIONS-**The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission—
>
> **(H)** may restrict or limit the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owed to or guaranteed by the United States.

2

47 U.S.C.§227(b)(2)(H).

Further, the amendment states:

> Deadline for Regulations.--Not later than 9 months after the date of enactment of this Act, the Federal Communications Commission, in consultation with the Department of the Treasury, shall prescribe regulations *to implement* the amendments made by this section.

Pub.L. 114-74, Title III, §301(b).

Of particular importance is that the statute provides no effective date for the amendments to take place. The FCC issued a Report and Order on August 2, 2016 and released it on August 11, 2016 adopting rules to implement the Budget Act. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act*, 31 FCC Rcd. 9074, 9104 (2016).) Per this Order the FCC limited the number of federal debt collection calls to three (3) within thirty (30) days. Id. Furthermore, the FCC also determined that a consumer has the right to request all calls to cease regardless of whether the caller has prior express consent. Id. This Order (or summaries thereof) was published in the Federal Register Vol. 81, NO. 221 November 16, 2016. A copy of which is attached as **Exhibit B**. Per paragraphs 51-53 of **Exhibit B**, the effective date of the regulations is 60 days after the Commission publishes a notice in the Federal Register indicating approval from the Office of Management and Budget ("OMB")"). However, the FCC withdrew its request for approval. A review of Exhibit B and C to the Declaration of Seth J. Andrews shows that the January 17, 2017 request has been withdraw and that there is no other request shown after 2015. Thus, there is nothing pending at OMB that would implement the regulations issued by the FCC.

Section 301(b) of the Budget Act hinges the application of the amendment regarding calls to collect federal debt to the enactment of the FCC's rules. As those rules

are not effective, no calls can be made without prior express consent. In Silver, a case relied on by Defendant; the court noted that plaintiff cited no authority for his argument that a statute has no legal effect until implementing regulations are put in place. Silver v. Pennsylvania Higher Educ. Assistance Agency, 2016 WL 1258629, at *3 (N.D. Cal. Mar. 31, 2016). While that may or may not be true in the Ninth Circuit, it is clearly not the case in the Second Circuit.

If one looks to the plain language of the statute, the effective date appears to be the date the implementing regulations are enacted. The word "implement," when used as a verb, is defined as to "carry out, accomplish; especially: to give practical effect to and ensure of actual fulfillment by concrete measures."[1] Thus, the plain language of the statute suggests that the implementing regulations were necessary to carry out the desired effect of the statute.

The Second Circuit has held that a statute is effective if the implementing regulations are merely interpretive, and remain ineffective if the implementing regulations are "legislative." In Sweet v. Sheahan, 235 F.3d 80, 91 (2d Cir.2000), the difference between interpretive and legislative regulations explained as follows:

> Interpretive rules and legislative rules differ in important ways. Legislative rules bind members of the agency and the public, and such rules receive substantial deference from the courts. *See* Kenneth Culp Davis & Richard J. Pierce, Jr., 1 Administrative Law Treatise ("*Treatise*") § 6.3, at 233–38 (3d ed.1994) (citing sources).⁹ Indeed, we have stated that "[w]hen Congress delegates to an agency the power to promulgate rules, 'the [agency] adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner....' " *United States v. Chestman*, 947 F.2d 551, 557–58 (2d Cir.1991) (quoting *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977) (second alteration in original)). Legislative rules can impose obligations on members of the public distinct from, and in addition to, those imposed by statute. *See* Davis & Pierce,

---

[1] http://www.merriam-webster.com/dictionary/implement

>*Treatise,* § 6.3, at 234. Because of the potentially powerful nature of legislative rules, it is essential to recognize that agencies have the power to issue legislative rules only if, and to the extent that, Congress has so authorized. *See id.; see also Yuzary,* 55 F.3d at 51 (discussing and quoting *Treatise*).

Sweet v. Sheahan, 235 F.3d 80, 91 (2d Cir. 2000)

In Sweet, the Court held that because, 1) the regulations were promulgated pursuant to explicit statutory authority, and 2) the regulations, once enacted, would create legal obligations and/or create new rules, that they were legislative in nature. As such, the Court found that the statute in question did not take legal effect until the implementing regulations were promulgated. Id., at 92-94.

It is submitted that the facts in this case are virtually identical to the facts in Sweet. The regulations are to be promulgated pursuant to specific statutory, and 2) they will create new rules that collectors of government debt must abide by.

Lastly, the cases cited by the Defendant clearly either lacked the respective Plaintiffs making the above statutory analysis argument to the respective courts or that those courts assumed the legal effectiveness of the Budget Act. It is evident from the plain language of the Budget Act, August 2, 2017 FCC Ruling and Order as well as the November 16, 2017 Federal Register, that the amendments to the TCPA, are to date, not effective.

And even if they were effective, the amendments cannot be separated from the FCC regulations which limit the calls to 3 per month and give the consumer the right to revoke prior express consent to be called. Thus, either way the Defendant's conduct violated the TCPA per Plaintiff's revocation on August 30, 2017. See Affidavit of Alfred Schneider ¶¶ 7-8.

5

Defendant even cited to a case that echoes this premise that the amendment is subject to the regulations. See Weaver v. Navient Sols., Inc., , 2017 WL 3456325, at *3–4 (N.D. Ohio 2017) (finding that the calls occurred after the regulations promulgated by the Federal Communications Commission ("FCC") limiting the number of calls that may be made to a debtor to a maximum of three calls within a thirty-day period, and zero calls following a request by the debtor for no further calls).

Accordingly, it is submitted that the Budget Act amending the TCPA is not effective and that the Defendant's calls after Plaintiff's revocation violate the TCPA or in the alternative, if the amendment is effective, the regulations enacted by the August 2, 2017 Order allow for Plaintiff to revoke the prior consent provided to the Defendant, in which case the Defendant's calls would also violate the TCPA. In either instance, the Court must deny the Defendant's motion.

## II. DEFENDANT'S RELIANCE ON *REYES* IS MISPLACED

### A. **There was no new consideration offered by the Defendant when Plaintiff filled out the economic hardship request application**.

The Defendant, relying on Reyes, incorrectly asserts that by the deferment application was a bargained for consideration between the parties and accordingly the consent provision is a material term to this agreement. Defendant cites to Ariz Holdings. LLC v. Bonano, 658 F. Supp 2d 589, 592 (S.D.N.Y 2009) as well as Forest Corp. v. Shvili, F. Supp 2d 367, 392 (S.D.N.Y. 2001) to support this claim. However, those cases are distinguishable from the facts of this matter as those involved requests for forbearance as opposed to here where Plaintiff requested a deferment.

According to the Department of Education Regulations relating to forbearance, 34 CFR§ 682.211 a(2) states,

"subject to paragraph (g) of this section, a lender **may** grant forbearance of payments of principal and interest under paragraphs (b), (c), and (d) of this section only if – (emphasis added)

(b) A lender **may** grant forbearance if -

(1) The lender and the borrower or endorser agree to the terms of the forbearance and, unless the agreement was in writing, the lender sends, within 30 days, a notice to the borrower or endorser confirming the terms of the forbearance and records the terms of the forbearance in the borrower's file; or

(2) In the case of forbearance of interest during a period of deferment, if the lender informs the borrower at the time the deferment is granted that interest payments are to be forborne.

(c) Except as provided in paragraph (d)(2) of this section, a lender **may** grant forbearance for a period of up to one year at a time if both the borrower or endorser and an authorized official of the lender agree to the terms of the forbearance. If the borrower or endorser requests the forbearance orally and the lender and the borrower or endorser agree to the terms of the forbearance orally, the lender must notify the borrower or endorser of the terms within 30 days of that agreement.

(d)

(1) A guaranty agency **may** authorize a lender to grant forbearance to permit a borrower or endorser to resume honoring the agreement to repay the debt after default but prior to claim payment. The forbearance agreement in this situation must include a new

7

agreement to repay the debt signed by the borrower or endorser or a written or oral affirmation of the borrower's or endorser's obligation to repay the debt. (emphasis added)

Thus, the plain language of the statute undeniably establishes that the lender has discretion to choose to grant forbearance.

However, there is no discretion with respect to the granting of a deferment. According to the Department of Education Regulations relating to deferments, 34 CFR§ 682.210 (s)(1)(i) states:

(s)Deferments for new borrowers on or after July 1, 1993 -

(1)General.

(i) A new borrower who receives an FFEL Program loan first disbursed on or after July 1, 1993 **is** entitled to receive deferments under paragraphs (s)(2) through (s)(6) of this section. For purposes of paragraphs (s)(2) through (s)(6) of this section, a "new borrower" is an individual who has no outstanding principal or interest balance on an FFEL Program loan as of July 1, 1993 or on the date he or she obtains a loan on or after July 1, 1993. This term also includes a borrower who obtains a Federal Consolidation Loan on or after July 1, 1993 if the borrower has no other outstanding FFEL Program loan when the Consolidation Loan was made. (emphasis added)

The rule of law is that when a statute's language is plain, "the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enterprises, Inc., 109 S. Ct. 1026, 1030 (1989) citing Caminetti v. United States, 37 S.Ct. 192, 194, (1917). "[w]here Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally,"

National Fed. of Indep. Bus. v. Sebelius, 544, 132 S.Ct. 2566, (2012) (citing Russello v. United States, , 104 S.Ct. 296, (1983)).  The verbiage in CFR§ 682.210 (s)(1)(i) unequivocally states that the borrower "**is**" entitled to a deferment as opposed to the permissive "**may**" language of the forbearance section**.**

Here, the Plaintiff was not entering into a new contract or making a promise to the Defendant in exchange for providing his cellular telephone number to be called with an automated dialing system per the TCPA as the Defendant argues. He filled out an application for an eligibility program that he was entitled to per the execution of the promissory notes for the federal student loans. There was nothing new that Defendant provided the Plaintiff that would qualify as consideration. The Defendant had no choice but to provide the Plaintiff with the deferment upon him qualifying per CFR§ 682.210 (s)(1)(i).

The Defendant also cannot claim that Plaintiff did not meet the eligibility requirements for a deferment and although he did not necessarily qualify, they still nonetheless provided the deferment.  A review of Exhibit A attached to the Declaration of Seth J. Andrews unequivocally demonstrates that if the applicant does not meet one of the criteria identified in paragraphs 1-7, then the application is denied as the applicant is not eligible for the deferment.  Since the Defendant approved the application for the Plaintiff back in 2012, the Plaintiff must have qualified otherwise, as Exhibit A indicates, he would not have been eligible.

Hence, Reyes is inapplicable to this case as there was nothing new bargained for between the parties relative to the request for deferment. Furthermore, it is undisputed that Plaintiff did not provide his cellular telephone to the Defendant when he applied for

the student loans. Nor did he provide his cellular telephone number in a bilateral contract… i.e. the promissory notes. The Second Circuit has held that that in instances where there is an established business relationship, prior express consent for automated debt collection calls is granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."Nigro v. Mercantile Adjustment Bureau, LLC, 769 F.3d 804, 806 (2d Cir. 2014)

In sum, the Plaintiff never provided his cellular telephone number during the time in which the transaction occurred that resulted in the debt being owed.  As such, Defendant never acquired the requisite prior express consent to call his cellular telephone. As the Defendant was obligated to provide the deferment upon the Plaintiff's request per the Department of Education Regulations, there was never any consideration provided to the Plaintiff in exchange for receiving the consent to call the Plaintiff's cellular telephone.

### B.  The application for deferment is not a bilateral contract

The Defendant likewise mischaracterizes the request for a deferment as a bilateral contract. It is not a binding legal agreement but rather a simple application. This type of document is not akin to the lease agreement that was signed by the plaintiff in Reyes. See Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51, 53 (2d Cir. 2017) (The lease itself contained a number of provisions to which Reyes assented when finalizing the agreement, including consent to receive ATDS calls to his cellular telephone).

The Second Circuit in Reyes adopted Gager's holding regarding a consumer's ability to revoke a gratuitous supplying of a contact number. See Gager v. Dell Fin Servs. LLC., 727 F.3d 265 (3d Cir 2013). In its analysis, the Second Circuit stated:

> In *Gager* and *Osorio* the plaintiffs provided such voluntary consent to be contacted by furnishing their telephone numbers to businesses in connection with loan and insurance applications, respectively. *See Gager*, 727 F.3d at 267; *Osorio*, 746 F.3d at 1247; *see also Rules and Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752, 8769 (1992) (ruling that the "knowing[ ]" release of a phone number to a third party constitutes "express consent" to receive telephone calls from that party under the TCPA). The courts in those cases found, and the 2015 FCC ruling confirmed, that consent of this kind, which is not given in exchange for any consideration, and which is not incorporated into a binding legal agreement, may be revoked by the consenting party at any time. This conclusion is well-supported by common law authority, which counsels that "[u]pon termination of consent its effectiveness is terminated." Restatement (Second) of Torts § 892A(5) (Am. Law Inst. 1979).  Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51, 57 (2d Cir. 2017), as amended (Aug. 21, 2017).

As such, any prior consent provided gratuitously may be revoked. Here, Plaintiff voluntarily provided his cellular telephone number to the Defendant on multiple occasions but never provided the consent to call him on his cellular telephone as a part of contractual bargained for agreement. Once he instructed the Defendant to stop calling him, he effectively revoked his prior consent and the Defendant was obligated to no longer call him.

## **CONCLUSION**

Accordingly, by reason of the foregoing, it is respectfully submitted that this Court should deny Defendant's Motion for Summary Judgment in its entirety.

Dated: December 12, 2017           s/Seth J Andrews_____
                                               Seth J. Andrews, Esq.
                                               Law Offices of Kenneth Hiller PLLC
                                               *Attorneys for Plaintiff*
                                               6000 North Bailey Avenue, Ste. 1A
                                               Amherst, New York 14226
                                               (716)564-3288
                                               Email: sandrews@kennethhiller.com