UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| ALFRED SCHNEIDER,<br><br>                                                    Plaintiff,<br>-vs-<br><br>NAVIENT SOLUTIONS, LLC,<br>                                                    Defendant. | DECISION AND ORDER<br><br>16-CV-6760 CJS |

_____

APPEARANCES

        For Plaintiff:         Seth Andrews
                                         Law Offices of Kenneth Hiller, PPLC
                                         6000 North Bailey Avenue, Suite 1A
                                         Amherst, New York 14226

        For Defendant:     Jacqueline M. Aiello
                                         Scott H. Bernstein
                                         Stradley Ronon Stevens & Young LLP
                                         100 Park Avenue Suite 3210
                                         New York, New York 10017

INTRODUCTION

Plaintiff brought this action pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200 *et seq.*, alleging that Defendant "initiat[ed] telephone calls to [his] telephone using an automatic telephone dialing system and/or used an artificial and/or prerecorded voice to deliver messages without [his] consent." Now before the Court is Defendant's Motion for Summary Judgment (Docket No. [#22]). The application is granted and this action is dismissed.

BACKGROUND

Briefly summarized, the undisputed facts viewed in the light most-favorable to

Plaintiff are as follows. In 2008 and 2009, Plaintiff obtained Stafford student loans funded by the United States Department of Education. The United States Department of Education hired Defendant Navient Solutions, Inc. ("Navient") to service Plaintiff's loans. To the extent that Navient had any communications with Plaintiff as alleged in this action, it was in connection with servicing the student loan debt that Plaintiff owed to the United States Department of Education.

On or about September 21, 2012, Plaintiff requested, and was granted, an Economic Hardship Deferment of his obligation to repay the student loans. As part of Plaintiff's written request for the deferment, he agreed that Navient could contact him concerning the loans by calling his cell phone, using automatic dialing equipment and artificial or pre-recorded voice messages. Plaintiff also gave similar consents to Navient over the internet on multiple occasions in 2015.

In 2015, Navient began using an automatic dialing device to call Plaintiff's cell phone concerning the debt. In that regard, Navient apparently maintains that Plaintiff's payment-deferment period had ended, and that his payments were overdue. Navient's pre-recorded messages indicated that there was an important message for Plaintiff regarding his loan, and that he should call Navient using a telephone number provided.

On or about August 30, 2016, Plaintiff spoke directly with one of Navient's representatives. The record contains an audio recording of the conversation.[1] During the conversation, which remained cordial at all times, Navient's representative first noted that Plaintiff's payments were more than two hundred days overdue, and asked if Plaintiff was

---

[1]Schneider Affidavit, Exhibit A.

able to make a payment. Plaintiff responded that he believed his loans were in forbearance mode, to which Navient's representative responded that the loans were not currently in forbearance, although they had been previously. The representative offered to process another forbearance request for Plaintiff, and, to that end, asked him about his employment status and ability to make any monthly payment. Plaintiff indicated that he had just returned to work (meaning, presumably, after a period of unemployment). The representative then asked Plaintiff if he would be able to make his nominal required monthly payment, and Plaintiff responded that Navient had been "calling [him] like crazy," and asked that the calls stop. Further, Plaintiff stated that he was not in a position to pay anything "right now." Plaintiff then stated, "I'd like to ask that you guys stop calling me." Unruffled, the Navient representative pressed on, and indicated that she could still set up another forbearance agreement, and again asked about Plaintiff's ability to make any payment. Plaintiff answered the representative's question about his family size, but when the representative inquired about his current monthly income, Plaintiff responded that he was "really not interested in looking into this right now" because he was "very busy," but added, "We'll talk about it some other time." The Navient representative responded that if Plaintiff did not want to talk about the matter, his account would remain delinquent and the "phone calls are gonna continue." Plaintiff responded, "OK, well, I guess you'll have to call me back another time then." The Navient representative reiterated that if Plaintiff had time "now," they could address the forbearance issue, to which Plaintiff responded, "Ah, not at the moment."

Thereafter, Navient continued using automatically-dialed calls to contact Plaintiff's cell phone. Between August 30, 2016 and September 14, 2016, Navient placed sixteen calls to Plaintiff's cell phone.

On November 22, 2016, Plaintiff commenced this action pursuant to the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States– . . . to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice– . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States*[.]

47 U.S.C.A. § 227(b)(1)(A)(iii) (Westlaw 2018) (italics added). The above-quoted language excepting calls "made solely to collect a debt owed or guaranteed by the United States," was added to the statute by Section 301 of the Bipartisan Budget Act of 2015, PL 114-74, Nov. 2, 2015, 129 Stat 584 ("the 2015 Budget Act"). Prior to such amendment, the TCPA's prohibitions pertained even to calls made to collect debts owed to the United States.

Following a period of pre-trial discovery, on October 9, 2017, Navient filed the subject motion [#22] for summary judgment. Navient admits that "[t]he TCPA generally requires a caller to obtain the prior express consent of the called party when making non-emergency calls to a wireless telephone using an [automatic dialer] or an artificial pre-recorded voice."[2] However, Navient contends, preliminarily, that even assuming *arguendo* that Plaintiff's request on August 30, 2016, to have the calls stopped, was an effective revocation of consent, any calls Navient made to him prior to that date did not violate the TCPA, because he had given consent for such calls. Further, with regard to calls that Navient made to

---

[2]Def. Memo of Law [#22-3] at p. 5

Plaintiff after he purportedly revoked consent, Navient maintains that there are no disputed issues of material fact, and that Plaintiff's claim fails for two reasons: 1) the calls were made "solely to collect a debt owed to or guaranteed by the United States," and therefore were expressly exempted from the restrictions contained in 47 U.S.C. § 227(b)(1)(A)(iii); and 2) alternatively, even if the calls were not exempted, Plaintiff's attempt, on August 30, 2016, to unilaterally revoke consent was not effective, pursuant to *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 56-57 (2d Cir. 2017) ("*Reyes*"), because such consent was a contractual provision, and therefore could not be revoked unilaterally.

On December 12, 2017, Plaintiff filed papers [#25] opposing Navient's summary judgment motion. Plaintiff insists that his claims cannot be dismissed as a matter of law for several reasons. First, Plaintiff contends that the TCPA Amendment contained in Section 301 of the 2015 Budget Act, purporting to exempt calls made to collect debts owed to the United States, *never became effective* because the Federal Communications Commission ("FCC") never issued implementing regulations as required by the statute. The statutory deadline for the FCC to prescribe such regulations was nine months after the enactment of the 2015 Budget Act. Specifically, Section 301(b) of the 2015 Budget Act stated:

> DEADLINE FOR REGULATIONS.—Not later than 9 months after the date of enactment of this Act, the Federal Communications Commission, in consultation with the Department of the Treasury, shall prescribe regulations to implement the amendments made by this section.

However, the FCC has never issued such regulations. Plaintiff argues, therefore, that the relevant TCPA Amendments are a nullity, which means that the calls Navient made to

Plaintiff were *not* excepted from the TCPA. On this point, Plaintiff relies primarily upon the Second Circuit's decision in Sweet v. Sheahan, 235 F.3d 80, 91 (2d Cir. 2000) ("*Sweet*").

Alternatively, Plaintiff argues that even if the relevant TCPA Amendment became effective, Defendant is nevertheless bound by administrative rules restricting the number of calls that can be made to collect debts owed to the United States. In that regard, Section 301 of the 2015 Budget Act, in addition to directing the FCC to prepare regulations, stated that such regulations could, if the FCC chose, limit "the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owned to or guaranteed by the United States." 47 U.S.C.A. § 227(b)(2)(H). On August 11, 2016, the FCC issued a Report and Order, entitled "In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991," proposing regulations to implement Section 301 of the 2015 Budget Act. In pertinent part, the proposed rules purported to limit debt collectors attempting to collect debts owed to the United States to making three calls within a thirty-day period, and further directed that such debt collectors had to stop calling altogether if requested to do so by the debtor. *See, Id.*, 81 FR 80594-02, 2016 WL 6745144 (FCC Nov. 16, 2016).[3] However, it is undisputed that those proposed regulations never took effect.[4] Nevertheless, Plaintiff contends that Navient violated both

---

[3]As this date in this citation indicates, the proposed rules were not published in the Federal Register until after the telephone calls were made about which Plaintiff is complaining.

[4]Despite the fact that only certain parts of the proposed regulations required approval by the Office of Management and Budget ("OMB"), the FCC chose not to have any of the regulations take effect until OMB gave such approval. *See*, FCC 16-99 at ¶ 72, 31 FCC Rcd. at 9101; *see also*, 20 No. 9 Consumer Fin. Services L. Rep. 15 (Sep. 25, 2016) ("The final rules, released on Aug. 11, 2016, will become effective 60 days after the FCC publishes notice in the Federal Register of the Office of Management and Budget's approval."). Apparently, however, OMB never gave such approval, and the FCC eventually withdrew its request to OMB, thereby effectively preventing any of the proposed regulations from taking effect. *See*, Pl. Memo of Law [#25-6] at pp. 3 (Referencing fact that FCC withdrew the

6

aspects of the proposed rules.

Plaintiff also disputes Navient's contention that his consent was a binding contractual provision that could not be revoked unilaterally. On this point, Plaintiff argues that his consent to Navient was not a bargained-for contractual provision, and that Navient never gave him any consideration in exchange for such consent. Rather, Plaintiff argues that Navient was required by law to grant him a "deferment," citing 34 C.F.R. § 682.210(s)(1)(i). Plaintiff therefore maintains that he could, and did, unilaterally revoke his consent to Navient.[5]

On January 12, 2018, Navient filed a reply [#28]. Navient first points out that Plaintiff's response fails to allege the existence of any triable issues of fact. Additionally, Navient contends that Section 301 of the 2015 Budget Act took effect immediately on its date of enactment (November 2, 2015) without regard to whether the FCC subsequently promulgated implementing regulations. On this point, Navient cites to various legal sources, including statements by the FCC,[6] acknowledging that Section 301 of the 2015 Budget Act is presently in effect, and exempts calls made to collect debts owed to the United States.

Further, Navient maintains that regardless of whether Plaintiff was entitled to receive a payment deferment, the deferment provision was "a contract option within" at least two of

---

request to OMB, and arguing, therefore, that the regulations have never taken effect).

[5]Plaintiff's supporting affirmation reiterates that on August 30, 2016, he instructed Navient to stop calling him: "I instructed the Defendant that I no longer wished to be contacted on my cellular telephone regarding these student loans as I had requested forbearance as I was unable to currently make any payments on these loans."

[6]*See, e.g.*, FCC 16-99 at ¶ 5 ("As amended by Section 301 of the Budget Act, Sections 227(b)(1)(A) and (B) of the TCPA *now* explicitly except from the prior express consent requirement . . . calls [that] are 'made solely to collect a debt owed to or guaranteed by the United States.") (emphasis added, footnote omitted).

7

Plaintiff's promissory notes, which could not be unilaterally revoked.

On May 17, 2018, counsel for the parties appeared before the undersigned for oral argument. On May 18, 2018, the Court requested further clarification from counsel regarding the history and effect of the FCC's Report and Order ("In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991") discussed above, which counsel provided.[7]

## ANALYSIS

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts

---

[7]The Court requested that counsel respond by May 21, 2018. Defendants counsel did so. Plaintiff's counsel did not. In any event, all briefing was completed as of May 21, 2018.

8

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Plaintiff maintains that Navient violated 47 U.S.C. § 227(b)(1)(A)(iii) by calling him sixteen times after he revoked his consent for such calls. However, the Court agrees with Navient that it was entitled to call Plaintiff, even without his prior consent, because it was attempting to collect a debt owed to the United States. Consequently, the Court finds that Navient is entitled to summary judgment, without regard to whether Plaintiff's revocation of consent was effective.

The resolution of Navient's motion turns upon 47 U.S.C. § 227(b)(1)(A)(iii) which, as set forth earlier, excludes calls "made solely to collect a debt owed to or guaranteed by the United State." There is no dispute that Navient was calling Plaintiff about a debt owed to or guaranteed by the United States.

As for Plaintiff's contention that the relevant section of the statute (Section 301 of the 2015 Budget Act) never took effect, the Court disagrees. The Bipartisan Budget Act of 2015, Public Law 114-74, which included Section 301 at issue here, was enacted on

9

November 2, 2015. Unlike other sections of that Act which had their own discrete effective dates, Section 301 of that Act did not provide for any different effective date than that of the Act as a whole. Accordingly, the presumptive effective date for Section 301 was November 2, 2015. "Where no time is set for a statute to go into effect and no constitutional or general statutory provision governs, a statute becomes effective on the day of its passage or enactment into law. Conversely, if a statute itself schedules a specific effective date, it is that postponed date and not the earlier date of enactment which controls." *Schulte v. Beneficial Fin. of Kansas, Inc.*, 8 B.R. 12, 16 (Bankr. D. Kan. 1980), *aff'd sub nom. Rodrock v. Sec. Indus. Bank*, 642 F.2d 1193 (10th Cir. 1981), *aff'd sub nom. United States v. Sec. Indus. Bank*, 459 U.S. 70, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982); *see also, McElrath v. United States*, 102 U.S. 426, 26 L. Ed. 189 (1880) ("A Federal statute takes effect from its date."); *United States v. Carlson*, No. CRIM. 12-305 DSD/LIB, 2013 WL 5125434, at *20 (D. Minn. Sept. 12, 2013) ("It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment. It is axiomatic that 'the date of enactment' is 'the date it was signed by the President.' This simple principle has a long pedigree in Supreme Court jurisprudence.") (citations and footnote omitted), *aff'd*, 810 F.3d 544 (8th Cir. 2016).

Although Section 301 gave the FCC nine months to prescribe implementing regulations, such fact does not mean the statute did not become effective as soon as it was signed by the President. The Court interprets the plain language of Section 301 as indicating an intent to immediately and completely exempt automated calls made to collect debts owed to or guaranteed by the United States, from the restrictions of 47 U.S.C. §

227(b)(1)(A)(iii), while also giving the FCC the ability to later "restrict or limit the number and duration" of such calls. This seems perfectly reasonable.

On the other hand, Plaintiff's interpretation of Section 301 -- that the FCC could (intentionally or otherwise) thwart the will of Congress and the President by simply failing to prescribe regulations within nine months,[8] is not suggested by the plain language of the statute and does not strike the Court as a reasonable or desirable interpretation. *See, e.g., Lynch v. Lyng*, 872 F.2d 718, 721 (6th Cir. 1989) ("We do not dispute that legal effectiveness can be made subject to implementing regulations, but legal effectiveness is not made subject to the Secretary's power every time a provision is not self-executing. In the present case, it is reasonable to assume Congress wanted its changes to take immediate effect, but it recognized that the food stamp distribution system is a complex, multi-leveled bureaucracy. Implementing changes requires time and care, so Congress granted the Secretary time to implement the changes in an orderly manner. The Secretary's argument, that in addition to time for implementation he was also given the power to determine the effective dates, proves too much. If such were the case, the Secretary could have waited until April 1, 1987, to issue implementing regulations, and then given the states even greater time to enforce the Secretary's new regulations. By thus postponing the effective date for an extended period, the Secretary seemingly [would have] almost unbridled authority to thwart the remedial intent of Congress. . . . The Secretary's interpretation would result in at least the possibility of clearly inappropriate results being obtained.").

---

[8] Section 301(b) of the Budget Act states that "[n]ot later than 9 months after the date of enactment of this Act, the [FCC] . . . *shall* prescribe regulations to implement the amendments mad by this section[.]"

The argument asserted by Plaintiff on this point – that Section 301 of the 2015 Budget Act has not yet taken effect due to the FCC's inaction – was also raised and rejected in *Whalen v. Navient Solutions, LLC*, No. 417CV00056TWPDML, 2018 WL 1242020, at *4 (S.D. Ind. Mar. 9, 2018) ("*Whalen*") ("It is telling that Congress specifically made other sections of the Budget Act effective at later dates while not providing a future effective date to the TCPA amendment. The FCC (and the Department of Education) lacks authority to amend a statute of Congress, and thus, the rules and regulations of the FCC could not change the effective date of the TCPA amendment in the Budget Act."). This Court agrees with the *Whalen* Court's reasoning.

Plaintiff's attempt to rely on the Second Circuit's ruling in *Sweet* is also unavailing, as that case is factually inapposite. In particular, *Sweet* involved the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § § 4851-4856 ("the Paint Act"), which, in pertinent part, directed the U.S. Department of Housing and Urban Development ("HUD") to promulgate regulations requiring sellers and lessors of residential real property to make disclosures concerning the presence of lead-based paint hazards. *See, Sweet*, 235 F.3d at 84 ("The statute provides that the regulations 'shall' require a lead warning statement[.]"). The statute directed HUD to promulgate regulations "no later than October 28, 1994," and further directed that such regulations should take effect on October 28, 1995. *Id*. However, HUD failed to meet its deadline for drafting the regulations, which pushed the regulations' effective date back to December 6, 1996. *Id*.[9] The plaintiff in *Sweet*, who had rented an apartment prior to the regulations' effective date, sued the lessor under the Paint Act for

---

[9]The regulations, though, purported to impose a duty to disclose lead-paint hazards beginning much earlier -- on October 28, 1995 -- the date referenced in the statute.

12

injuries caused by lead-paint poisoning. However, the Second Circuit concluded that at the time of the rental, the defendant lessor had no obligation to warn the plaintiff tenant, because even though the Act and proposed regulations referenced a duty to warn beginning on October 28, 1995, the Act's implementing regulations had not taken effect by that date. As relevant to the instant case, the Circuit Court held that it was the regulation, and not the statue, which created the disclosure duty, stating:

> Our conclusion that the regulations, and not the statute, created the enforceable obligations on private parties is supported by the fact that, in the absence of Congressional direction, the agencies were compelled to make a number of decisions in the regulations *without which the [disclosure] duties of those private parties would not have been clear*.

*Sweet*, 235 F.3d at 86 (emphasis added). The Circuit Court further noted that the Paint Act specifically stated that the disclosure requirement would arise from the subsequent regulations, and not from the Act itself. *Id*. at 86-87 ("The obligations of sellers and lessors stem from the regulations to be promulgated by the agencies: "The regulations shall require ..." Thus, the statute imposes obligations on the agencies to promulgate regulations which will then – and only then – imposed obligations on sellers and lessors.").

By contrast, in the instant case it is Section 301 of the 2015 Budget Act itself that exempts calls made to collect debts owed to or guaranteed by the United States. There is nothing unclear or incomplete about the statutory language. In that regard, although Section 301 directed the FCC to prepare implementing regulations, and stated that the FCC *could* impose some specific additional restrictions on persons attempting to collect debts owed to the United States, it did not require that the FCC impose any such additional restrictions. *See*, 47 U.S.C.A. § 227(b)(2)(H) ("In implementing the requirements of this

13

subsection, the Commission– . . . *may* restrict or limit the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owed to or guaranteed by the United States.") (emphasis added). Such fact reinforces the Court's view that Section 301 of the 2015 Budget Act was meant to take effect immediately, and that while Section 301 could be later modified by regulations, it was not dependent upon such regulations for its effect. For all of these reasons, the *Sweet* decision is not on point.

As for Plaintiff's contention that Navient was nevertheless bound by the limitations contained in the FCC's proposed rules, which have never been finalized, the Court again disagrees, as proposed regulations "have no legal effect." *Sweet*, 235 F.3d at 87 (citation omitted).

Because the Court finds that Navient was not subject to the restrictions contained in 47 U.S.C. § 227(b)(1)(A)(iii), it need not consider the alternative arguments concerning Plaintiff's purported withdrawal of consent.[10]

## CONCLUSION

Defendant's motion [#22] for summary judgment is granted, and this action is dismissed. The Clerk is directed to close the action.

SO ORDERED.

Dated: Rochester, New York
      June 6, 2018

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[10]The Court notes, however, that Plaintiff's purported withdrawal of consent was at least somewhat ambiguous in the context of the entire conversation between him and the Navient representative, as described earlier.